**Paul CHATMAN, Petitioner,**

v.

**Thomas PAGE, Warden, Respondent.**

**No. 94 C 6715.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 17, 1994.

---

Brian M. Collins, Chicago, IL, for petitioner.

---

No attys. for respondent.

**MEMORANDUM OPINION AND ORDER**

SHADUR, Senior District Judge.

Paul Chatman ("Chatman"), represented by counsel other than the retained lawyer who had handled his criminal defense and the appeal from his conviction (as to the appeal, see 145 Ill.App.3d 648, 99 Ill.Dec. 332, 495 N.E.2d 1067 (1st Dist.1986)), has filed a Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2254 ("Section 2254"). In accordance with Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), this Court has reviewed the Petition and its accompanying exhibits and finds that all of Chatman's claims are wanting as a matter of law.

*Verdin v. O'Leary,* 972 F.2d 1467 (7th Cir. 1992) has spelled out in detail the operative standard for judging federal habeas petitions brought by persons convicted of crimes under state law. Although it is tempting to quote Judge Ripple's full treatment of the subject (*id.* at 1472–76) because it provides such definitive teaching for this case, a few brief excerpts will suffice (*id.* at 1472–73, 1474 and 1474–75 (footnotes omitted)):

> Under section 2254 of Title 28, "Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings. If the answer to either of these inquiries is 'no,' the petition is barred either for a failure to exhaust state remedies or for a procedural default." *Henderson v. Thieret,* 859 F.2d 492, 496 (7th Cir.1988), *cert. denied,* 490 U.S. 1009, 109 S.Ct. 1648, 104 L.Ed.2d 163 (1989). The Supreme Court has interpreted section 2254's definition of exhaustion to require that a petitioner "fairly present" the federal issue to the state courts as a precondition to exhaustion. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). It is also well-established that the issue of fair presentment is a useful approach for analyzing procedural default. *See United States ex*

*rel. Sullivan v. Fairman,* 731 F.2d 450, 453 n. 4 (7th Cir.1984) (" [T]he analysis dealing with whether a state court has been fairly apprised of potential constitutional ramifications of a claimed trial court error is equally applicable to waiver cases." ).

\* \* \* \* \* \*

> The *Daye* [*v. Attorney General of New York,* 696 F.2d 186, 194 (2d Cir.1982) (en banc) ] formulation we have adopted makes it quite clear that, for a constitutional claim to be fairly presented to a state court, both the operative facts and the "controlling legal principles" must be submitted to that court. *Picard v. Connor,* 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971).

\* \* \* \* \* \*

> As we said in *Sullivan,* 731 F.2d at 453: "A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court."

\* \* \* \* \* \*

> What is important is that the *substance* of the federal claim be presented fairly. *Anderson* [*v. Harless* ], 459 U.S. [4], 6, 103 S.Ct. [276] at 277 [74 L.Ed.2d 3 (1982) (per curiam) ]; *see Varnell v. Young,* 839 F.2d 1245, 1248 (7th Cir.1988). It is incumbent on the petitioner to "raise the red flag of constitutional breach." *Dougan v. Ponte,* 727 F.2d 199, 201 (1st Cir.1984).

Chatman simply has not done what *Verdin* demands—at least neither the Petition nor the Illinois Appellate Court decision ruling on his appeal gives any hint that he has done so. Indeed, Petition ¶ 6 candidly acknowledges that deficiency, ascribing Chatman's default in that respect to the lawyer who represented him both at trial and on appeal:

> 6. The grounds for relief stated above were not previously presented in any other court, state or federal, due to the fact that the same attorney represented Paul Chatman both at the trial level and the Circuit Court of Cook County, Illinois and at the Appellate level in the Illinois Appellate

Court. That attorney was Burton A. Brown, 205 West Wacker Drive, Suite 1000, Chicago, Illinois 60606.

That charge is all of a piece with the fact that the Petition ties each of Chatman's present contentions of constitutional deprivation to the allegedly constitutionally ineffective assistance that was provided by his former counsel.

■ But even a moment's analysis discloses that Chatman has not satisfied the necessary precondition to federal entertainment of his present claims on the merits. To the extent that Chatman complains directly that he suffered from constitutionally ineffective assistance of counsel at either the trial level or the appellate stage or both, such claims could have been tendered in a state post-conviction hearing under 725 ILCS 5/122–1 (after all, in bringing such a proceeding Chatman would have been unencumbered by the asserted incompetence of the counsel who had handled his trial and appeal[1]). That being the case, the best that Chatman could hope for as a precondition to obtaining relief via his present Petition would be his having to meet a cause-and-prejudice standard—a test that has been extended far beyond the scope marked out in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) to embrace procedural defaults of any kind. As *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991) has announced:

> We now make it explicit: In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Nor of course can Chatman bootstrap himself by pointing to his several ineffective-assistance-of-counsel claims—never tendered

to the state courts as they could readily have been—as themselves the "cause" for his procedural default. Here is what *Murray v. Carrier*, 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986) has said in that respect:

> Ineffective assistance of counsel, then, is cause for a procedural default. However, we think that the exhaustion doctrine, which is "principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518 [102 S.Ct. 1198, 1203, 71 L.Ed.2d 379] (1982), generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default. The question whether there is cause for a procedural default does not pose any occasion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause—a question of federal law—without deciding an independent and unexhausted constitutional claim on the merits. But if a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available. The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court "to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," *Darr v. Burford*, 339 U.S. 200, 204 [70 S.Ct. 587, 590, 94 L.Ed. 761] (1950), and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.

■ To be sure, that language from *Murray* does not literally apply here, because

---

1. *Barksdale v. Lane*, 957 F.2d 379, 384–86 & n. 12 (7th Cir.1992) has not only applied the *Coleman v. Thompson* standard referred to later in this paragraph of the text but has also made it plain that it is irrelevant for that purpose whether Chatman would have been able to obtain other

counsel to handle a state post-conviction proceeding or would have had to go it alone. In either event his failure to have pursued that route flunks the "cause" prong of the cause-and-prejudice test.

Chatman no longer has the opportunity to obtain state court review of his inadequate-assistance claims—he has let that opportunity lapse by passage of time. But because *Verdin* and *Coleman* teach that the same cause-and-prejudice analysis applies to evaluate a prisoner's waiver of his constitutional claims, the principle that underpins the *Murray* statement has equal force here.

In sum, Chatman has tendered nothing to suggest a legally acceptable cause [2]. That then dooms all of Chatman's present claims that are based on the constitutionally ineffective assistance of counsel. And to the extent (if any) that Chatman now seeks to complain of matters other than such lawyer deficiencies as also having deprived him of constitutional rights, he has plainly failed the *Verdin–Coleman* test on that score as well.

### Conclusion

This Court's review and analysis have shown that "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court" (Section 2254 Rule 4). Accordingly the Petition is dismissed summarily, and Chatman's new counsel will be so notified on his behalf.

2. That lack obviates the need to address the added requirement that Chatman must show resulting prejudice as well (see *Barksdale,* 957 F.2d at 386). It is however worth noting parenthetically that this Court's brief review of Chatman's substantive assertions leaves it with more than substantial doubt that he could satisfy that criterion either. Most importantly, it is certainly plain that he does not qualify for the rarely-applicable "fundamental miscarriage of justice" exception to the principles stated in the text.